UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DERON DARNELL LOVE,

        Plaintiff,

        v.                                              Case No. 24-cv-0252-bhl

BRIDGETT PROSPER et al.,

        Defendant.

---

## DECISION AND ORDER GRANTING DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

---

Plaintiff Deron Darnell Love, an inmate at the Waupun Correctional Institution, is representing himself in this 42 U.S.C. §1983 action. He is proceeding on Eighth Amendment claims based on allegations that Defendants Bridgett Prosper and Kelsey Stone ignored him while he cut his arm and that Defendants Andrea Bleecker, Kataryna Krainyk, Allison Pach, and Robert Weinman (collectively, the Medical Defendants) failed to adequately treat his injury. On December 13, 2024, Defendants moved for summary judgment. For the reasons explained below, the Court will grant the motion and dismiss this case.

### BACKGROUND

During the relevant time, Love was incarcerated at the Waupun Correctional Institution, where Stone worked as a correctional sergeant and Prosper worked as a correctional officer. Bleecker, Krainyk, and Pach were nurses at the institution, and Weinman was the health services unit manager. Prosper explains that, on October 22, 2022, she was responsible for handing out medication. She asserts that she stopped at Love's cell to give him his medication, but he ignored her. According to Prosper, this was her only interaction with Love during the relevant time.

Prosper and Stone insist that at no time on October 22, 2022, did they see Love harming himself or have information that he was harming himself. Dkt. No. 30 at ¶¶1-21.

Love disputes Prosper and Stone's version of what happened. According to Love, Prosper came to his cell door at which time he told her that he was going to kill himself and started cutting his arm in front of her. Loves states that Prosper then walked away. Love's assertions regarding Stone's involvement are vague—he asserts only that he "told Sgt. Stone and CO Prosper that [he] was suicidal and showed 'her' a razor/sharp object." He also states that "staff" walked away after he started cutting himself. Dkt. No. 58 at ¶15; Dkt. No. 59 at ¶¶3-4.

Love asserts that he asked health services and security "numerous times" to treat and take pictures of his injuries, but they refused. The Medical Defendants explain that there is no evidence of anyone contacting health services about Love on October 22, 2022, the day of the incident. The next day, on October 23, 2022, Love submitted a health services request asking for band-aids and antibiotic cream for a cut on his arm. The request makes no mention of how he got the cut, nor does it describe the cut. Nurse Ann York (who is not a Defendant) responded that there was nothing in his chart documenting a cut or the need for band-aids. The next day, on October 24, 2022, Sgt. Wilson (who is not a Defendant) twice called the health services unit at Love's request and "asked them to send out the bandages gauze and tape that they had told [Love] they would send." There is no mention of who Sgt. Wilson spoke to when she passed along Love's request. Dkt. No. 30 at ¶¶23-24; Dkt. No. 59 at ¶6; Dkt. No. 34-1 at 6; Dkt. No. 61-1 at 1.

According to the Medical Defendants, Love next requested treatment for the cut on his arm on October 27, 2022, five days after he states he harmed himself. Love was returning from an offsite ophthalmology appointment and asked Bleeker, the intake nurse, for band-aids. Bleeker noted a cut that was about 2.5cm long (about the length of a peanut). She observed that the cut

2

was scabbed over and showed no signs of infection. Bleecker instructed Love that further treatment was not necessary because the injury was scabbed over. She instructed him on how to clean the area and told him to keep it dry. Love disputes that the cut was only 2.5cm long. He states that it was "inches" long, although he does not dispute that it was a single, linear line that was scabbed over. Dkt. No. 30 at ¶¶25-30; Dkt. No. 59 at ¶¶5A; Dkt. No. 34-1 at 1.

On October 31, 2022, Love sent another health services request asking why staff was refusing to provide him with proper medical treatment for his injury. Nurse Jessica Hosfelt (who is not a Defendant) reminded him that he had been seen a few days earlier and was informed that no treatment was medically indicated. The next day, he requested that pictures be taken of his arm to prove the cut was "at least 4 inches across [his] arm." Weinman informed Love that health services does not take pictures of injuries and directed him to contact security. Weinman explains that Love's November 1st request for pictures was the first time he learned of a cut on Love's arm. Bleecker, Pach, and Krainyk assert that they never received any health services requests about the cut, and no correctional officer ever notified them that Love needed medical attention for a self-inflicted wound. Dkt. No. 30 at ¶¶31-41.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party

3

Case 2:24-cv-00252-BHL    Filed 06/18/25    Page 3 of 7    Document 63

opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

Love's first claim is that Prosper and Stone violated his constitutional rights when they did not stop him from cutting himself. The Seventh Circuit has repeatedly "recognized a jail or prison official's failure to protect an inmate from self-harm as one way of establishing deliberate indifference to a serious medical need." *Miranda v. Cnty. of Lake*, 900 F.3d 335, 349 (7th Cir. 2018). Of course, not every claim by a prisoner that he did not receive adequate protection will succeed. *Phillips v. Diedrick*, No. 18-C-56, 2019 WL 318403 at *2 (E.D. Wis. Jan. 24, 2019) (citing *Estelle*, 429 U.S. at 104-05)). To prevail on such a claim, a plaintiff must provide evidence showing that defendants (1) were aware of an objectively serious risk of harm to the plaintiff; and (2) knowingly or recklessly disregarded it. *Szopinski v. Koontz*, 832 F. App'x 449, 451 (7th Cir. 2020) (citations omitted). In addition, a plaintiff suing for damages under §1983 must also develop "evidence of a recoverable injury." *Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020). This is because a plaintiff must "establish not only that a state actor violated his constitutional rights, but also that the violation *caused* the plaintiff injury or damages." *Roe v. Elyea*, 631 F.3d 843, 864 (7th Cir. 2011).

4

Love states under penalty of perjury that Prosper and Stone walked away from his cell after passively watching him cut himself. Although they dispute Love's version of events, his statements are sufficient to create a triable issue on whether Prosper and Stone were deliberately indifferent to the objectively serious risk of harm that Love posed to himself.[1] But Love's claim nevertheless fails "on the basic proposition that" he did not "develop[] evidence of a recoverable injury." *Lord*, 952 F.3d at 905. It is undisputed that Love did not seek treatment for the cut on his arm until the next day and, even then, he merely asked for band-aids and antibacterial ointment. Love did not mention how he got the cut, nor did he describe the cut. Further, when Bleecker observed the cut about five days after the incident, she described it as a single linear line about 2.5cm that was scabbed over and showed no signs of infection. Love disputes that the cut was only 2.5cm long—he states that it was "inches" long. But he offers no proof to rebut Defendants' assertions that he did not request treatment for an entire day, and when he did, he requested only band-aids and ointment. Love did not describe substantial bleeding or pain, nor does he suggest that the cut required sutures, stitches, or even steri-strips. A relatively superficial cut requiring only a band-aid is precisely the type of injury that the Seventh Circuit has held is insufficient to establish a cognizable harm. *See Lord*, 952 F.3d at 905 (holding that "physical injuries consist[ing] of only minor scratches, quickly and easily treated with a gauze bandage" are insufficient to establish a recoverable injury). Because Love has not presented evidence from which a jury could

---

[1] Defendants argue that video contradicts Love's version because it shows that neither Prosper nor Stone approached Love's cell during the relevant time, which they define as 7:45 p.m. based on an inmate complaint that Love submitted on October 23, 2022. Dkt. No. 36-2 at 8. But Defendants ignore a second inmate complaint that Love submitted on October 28, 2022, in which he identifies the time of the incident as 7:00 p.m. Dkt. No. 20-1 at 10. They also ignore Love's written request that video covering 7:00 p.m. until 8:30 p.m. be preserved "to prove that CO Prosper and Sgt. Stone stood at [his] door and watched [him] cut [himself] while antagonizing [him]." Dkt. No. 23-1 at 14. The video filed by Defendants shows what happened only from 7:30 p.m. until 8:00 p.m. Given evidence supporting a conclusion that the incident may have occurred as early as 7:00 p.m., the video, which starts at 7:30 p.m., does not "eviscerate a factual dispute" over whether Prosper and Stone stood at Love's cell and watched him cut himself. *Kailin v. Village of Gurnee*, 77 F.4th 476, 481 (7th Cir. 2023).

reasonably conclude that he suffered a cognizable harm, Prosper and Stone are entitled to summary judgment.

The Medical Defendants are also entitled to summary judgment. A defendant is liable for damages under §1983 only if he/she was personally responsible for the deprivation of a constitutional right, meaning that the deprivation occurred at the defendant's behest or with his/her knowledge and consent. *See Williams v. Shah*, 927 F.3d 476, 482 (7th Cir. 2019). Love asserts that he wrote "numerous" health service requests asking that his self-inflicted cut be treated. Even assuming Love's vague assertion is true, he offers no evidence that Bleecker, Pach, Krainyk, or Weinman received any written requests from him for treatment immediately after he cut himself. His October 23, 2022 request was responded to by Nurse York, who is not a Defendant. And while Sgt. Wilson confirmed in response to Love's information request that she called health services at his request, she does not identify who she spoke to. By the time Bleecker evaluated Love five days after the incident, the cut was all but healed with a healthy scab and no signs of infection. She explained that no treatment was necessary, and Love offers no evidence to rebut that assessment. Weinman concedes that he responded to a health service request from Love requesting that someone take pictures of his arm, but that was more than a week after the incident and after Bleecker's assessment that no treatment was necessary.

Thus, even assuming the self-inflicted cut required some sort of treatment, Love offers no evidence from which a jury could reasonably conclude that Bleecker, Pach, Krainyk, or Weinman knew about the injury when treatment was necessary. Because Love provides no evidence that the Medical Defendants were personally involved in allegedly denying him treatment, they are entitled to summary judgment.

6

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' motion for summary judgment (Dkt. No. 28) is **GRANTED** and this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on June 18, 2025.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $605.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.